■ In the Matter of KATHLEEN A. McGRATH et al., Appellants, v TOWN BOARD OF THE TOWN OF NORTH GREENBUSH et al., Respondents. (And Another Related Proceeding.) [678 NYS2d 834] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Canfield, J.), entered June 4, 1998 in Rensselaer County, which, in combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, dismissed the petitions/complaints due to petitioners' lack of standing.

In these combined CPLR article 78 proceedings and declaratory judgment actions, petitioners challenge the December 12, 1997 action of respondent Town Board of the Town of North Greenbush enacting Local Laws, 1997, No. 22 of the Town of North Greenbush. Local Law No. 22 rezoned a 33-acre parcel of land in Rensselaer County located on State Route 4 in the vicinity of the Interstate Route 90 exit 8 ramp from Interstate Transition (hereinafter IT)[1] to General Business (hereinafter GB) to allow construction of a shopping center. Supreme Court granted respondents' motions to dismiss the petitions/complaints due to petitioners' lack of standing and denied petitioners' cross motion for a preliminary injunction. Petitioners appeal.

In order for petitioners to establish standing to challenge the enactment of a local zoning law, they have the burden of coming forward with probative evidence to demonstrate that they will suffer direct harm different from that of the public at large which falls within the zone of interest sought to be promoted by the Town's zoning laws (see, Matter of Piela v Van Voris, 229 AD2d 94, 95). Additionally, to establish standing to raise their secondary issue regarding the Town's noncompliance with the public hearing notification provisions mandated by the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA), petitioners must demonstrate that they will suffer a specific noneconomic environmental injury within the zone of interest protected by that statute (see, Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 687; Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433).

Petitioner Country True Value, Inc. (hereinafter True Value) owns a hardware store that is located approximately two miles north of the subject property on Route 4. It alleges that it will be adversely impacted by the change in zoning because the proposed shopping center (which will include a competing hardware store) will create a traffic "bottleneck" on Route 4 that will make it more difficult for True Value's customers to reach its store. True Value also avers that the proposed shopping center will result in decreased values for properties along

---

1. As originally conceived, the IT zoning classification was created to permit development of "shopping centers" incorporating a variety of large-scale uses, such as supermarkets, department stores, home improvement centers, movie theaters and factory outlet stores along Route 4 in an area directly abutting the Town of North Greenbush's boundary with the Town of East Greenbush, provided that vehicular access could be obtained by means of a direct connector road to the new exit 8 access road to Route 90 which was completed in 1997.

Route 4, including True Value's property. Finally, it claims that the rezoning places True Value at a competitive disadvantage because it has had to comply with the existing zoning law. In our view, none of the allegations are sufficient to demonstrate that the harm True Value will suffer is different from that of the public at large (*see, Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774; *Matter of Many v Village of Sharon Springs Bd. of Trustees*, 218 AD2d 845), and therefore we agree with Supreme Court that True Value has failed to establish standing.

We reach a different conclusion with respect to petitioner Kathleen A. McGrath. First, McGrath alleges in her verified petition that she resides "within approximately 500 feet of the site". This specific allegation demonstrating close proximity to the proposed project (*see generally, Matter of Piela v Van Voris, supra*) is sufficient to create a presumption that she will be adversely affected in a way different from the public at large (*see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals*, 69 NY2d 406, 413-414; *Matter of Sopchak v Guernsey*, 176 AD2d 403; *Matter of Friends of Woodstock v Town of Woodstock Planning Bd.*, 152 AD2d 876, 878). Furthermore, averments that McGrath will suffer harm from "increased noise", "increased vehicle and truck traffic", and "degradation in the character of the neighborhood and style of life" are concerns within the zone of interest protected by the Town's zoning laws (*see, Matter of Rosch v Town of Milton Zoning Bd. of Appeals*, 142 AD2d 765, 767). We also note that McGrath's allegations of traffic congestion and its consequential increase in noise are potential noneconomic environmental concerns within the zone of interest of SEQRA (*see, Matter of Lo Lordo v Board of Trustees*, 202 AD2d 506, 506-507; *Matter of Heritage Co. v Belanger*, 191 AD2d 790, 791). Therefore, we find that McGrath has established standing to challenge the enactment of Local Law No. 22. Accordingly, we reinstate McGrath's petitions/complaints and remit them to Supreme Court for further proceedings.

Prior to remittal, however, we deem it necessary in the interest of judicial economy to pass upon the merits of McGrath's motion for a preliminary injunction. "[I]n order to be entitled to a preliminary injunction, [she must] show a probability of success, danger of irreparable injury in the absence of an injunction, and a balance of the equities in [her] favor" (*Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862; *see, Grant Co. v Srogi*, 52 NY2d 496, 517). We turn first to an examination of the underlying merits of McGrath's claims.

Initially, McGrath contends that the Town failed to comply with the public notice provisions of SEQRA and the Town's Zoning Law. We find the arguments unpersuasive. Petitioner received actual notice of the proposed amendment and attended the consolidated public hearing on August 21, 1997. Therefore, she was not aggrieved by the alleged deficiencies in the published notice of August 5, 1997 (*see, Matter of Brew v Hess*, 124 AD2d 962; *Matter of Sutton v Board of Trustees*, 122 AD2d 506). In any event, we find that the notice "fairly apprise[d] the public of the fundamental character of the proposed zoning change * * * [and did] not mislead interested parties into foregoing attendance at the public hearing" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 678, *supra*). We also find no merit in the argument that the minutes of the Town Board do not reflect the approval of the SEQRA findings statement or the adoption of Local Law No. 22 in accordance with Municipal Home Rule Law § 20. Semantics aside, our review of the minutes of the December 11, 1997 meeting reveals that the findings statement was in fact approved and the amendment of the Zoning Law enacted by the vote of 4 to 1.

We now turn to McGrath's contention that the local law enacting the zoning amendment constitutes illegal spot zoning.[2] "[Z]oning determinations enjoy a strong presumption of validity, which can only be overcome by a showing that the decision to rezone was unreasonable and arbitrary" (*Matter of Save Our Forest Action Coalition v City of Kingston*, 246 AD2d 217, 221; *see, Matter of Daniels v Van Voris*, 241 AD2d 796). In fact, "the burden rests on the party attacking them to overcome that presumption beyond a reasonable doubt" (*Asian Ams. for Equality v Koch*, 72 NY2d 121, 131). The ultimate test of a spot zoning claim "is 'whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community' " (*Matter of Save Our Forest Action Coalition v City of Kingston*, *supra*, at 221, quoting *Matter of Daniels v Van Voris*, *supra*, at 799).

McGrath proffers the affidavit of James Moore, the former chairman of the Town's Master Plan Committee from 1992 to 1997, to support her claim of spot zoning. Even though several recommendations by the Master Plan Committee were adopted

---

2. "Spot zoning" refers to "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners" (*Rodgers v Village of Tarrytown*, 302 NY 115, 123; *see*, 1 Anderson, New York Zoning Law and Practice § 5.04, at 165 [3d ed]).

by the Town and incorporated into its Zoning Law, including the creation of the IT zoning district, we find it significant that the Town Board never adopted the Master Plan developed by the Master Plan Committee. Moore's averments that the zoning amendment is inconsistent with the Town's comprehensive land use plan are rooted in the assumption that the so-called Master Plan constitutes the Town's comprehensive land use plan. Clearly, since the proposed Master Plan was not adopted, it alone cannot evidence the Town's land use policies. In our view, the Town's Zoning Law is the best evidence in the record before us of the Town's land use policies and, therefore, constitutes the Town's "comprehensive plan". Notably, Moore does not address the issue of whether the zoning amendment is inconsistent with the Zoning Law.

To satisfy the statutory requirement that zoning legislation be in accord with a comprehensive plan (*see*, Town Law § 263), respondents need only show that the zoning amendment was "adopted for a legitimate governmental purpose and that there is * * * a reasonable relation between the end sought to be achieved by it and the means used to achieve that end" (*Village Bd. of Trustees v Zoning Bd. of Appeals*, 164 AD2d 24, 28; *see*, *Asian Ams. for Equality v Koch*, 72 NY2d 121, 131-132, *supra*). Respondents maintain that the amendment of the zoning classification for the subject parcel from IT to GB became necessary when the State Department of Transportation advised the Town Board that a Route 90 off-ramp connector was not feasible and that traffic patterns did not require construction of such a ramp. During the extensive review process, the Town Board considered surrounding land uses. It noted that the Town permitted construction of a grocery store and granted approval for another shopping center consisting of three separate retail stores in its BG zones. It also found that the subject parcel was located at the intersection of two State highways in an area already zoned for shopping center use and approximately 1/3 of a mile north of a similarly sized shopping center. The Town Board concluded that commercial development of the subject parcel for the intended retail uses of the IT/BG zones would be precluded unless the parcel was rezoned BG. Thus, respondents made a showing of a reasonable relation between the adoption of the rezoning amendment "and the worthwhile goal of improving the economic health of the community" (*Matter of Save Our Forest Action Coalition v City of Kingston*, *supra*, at 222; *see*, *Asian Ams. For Equality v Koch*, *supra*, at 132) and, accordingly, satisfied the statutory requirement. McGrath's proof on the instant motion is insufficient to overcome "the strong presumption of validity" attached to

respondent's adoption of the rezoning amendment (*see, Matter of Save Our Forest Action Coalition v City of Kingston, supra,* at 221).

Finally, we address McGrath's claim that shopping centers are not a permitted use in the BG zone. Since only the Town Board is empowered to grant a zoning change (*see,* Town Law § 265), its interpretation applying the Zoning Law to the parcel in question should govern unless it is unreasonable or irrational (*see, Matter of Frishman v Schmidt,* 61 NY2d 823, 824; *Matter of Capital City Rescue Mission v City of Albany Bd. of Zoning Appeals,* 235 AD2d 815). While shopping centers are not listed as permitted uses in the BG zone, the record indicates that the Zoning Law permits retail shops, service establishments, banks, and eating and drinking establishments in the BG zone. It further appears that the Town has consistently interpreted this grouping of retail uses in the BG zone as permitting shopping centers. Because there is no definition of "retail" in the Zoning Law, it "must be given its ordinary meaning" (*Van Nostrand v Dalmata,* 43 AD2d 752, 753). Webster's Third New International Dictionary 1938 (unabridged) defines "retail" as "the sale of commodities or goods in small quantities to ultimate consumers". The operations of a shopping center fall within this definition. Thus, the Town's inclusion of shopping centers among the permitted retail uses in the BG zone is reasonable.

In light of our analysis, we find that McGrath, based upon the record before us, has failed to demonstrate a probability of success on the merits. Since the first prong of the test for preliminary injunctive relief has not been satisfied, McGrath's application must be denied (*see, Doe v Axelrod,* 73 NY2d 748, 750). We need not address the remaining prongs of the tripartite test for issuance of a preliminary injunction.

White, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the petitions/complaints of petitioner Kathleen A. McGrath; said petitioner's motion for a preliminary injunction is denied and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.